MONROE, C. J.
Defendant was convicted of murder, without capital punishment and duly sentenced, and he has appealed. He has not appeared in this court, either in person or through counsel, and our examination *225 of the record discloses but one bill of exception, being a bill to the overruling of the defendant’s objection to the “swearing” of three tales jurors for examination on voir dire:
“(1) Because the procSs verbal of the jury commissioners fails to show that the commissioners ever drew the names of the parties above mentioned, or that 109 names of parties to serve as tales jurors were never placed in the box as required by law.
“ (2) That, if the jury commission really placed 100 names in a box, designated as ‘tales jurors,’ they did not do so ‘at the time it drew, the regular petit jury for the trial of criminal cases,’ at the present term of the Criminal Court, as required by the provision of Act 182 of * * * 1014.”
The statement per curiam, attached to the bill, reads:
“The evidence taken on the trial of this motion, or objection, shows that the jury commission complied with the letter of the law in selecting the tales jurors under the provision of the act 182 of 1914.”
The evidence thus referred to consists of procSs verbal showing the action of the jury commission on October 1,1914, and that showing its action on March 5, 1915, supplemented by the testimony of Henry Lastrappes, Jr., clerk: of the court The caption of the procSs verbal of October 1,1914, shows, inter alia, that the members of the commission were duly notified to convene on that day, and did convene, “for the purpose of supplementing the venire list, as per order of court dated and filed September 26, 1914, and to draw therefrom the names of 80 persons to serve as petit jurors for the week commencing Monday, November 16, 1914, and 30 persons to serve as petit jurors for the second week, commencing November 23, 1914, and to select the names of 100 men, good and true, to serve as tales jurors.” Then follows a recital, in detail, of the striking from the general venire list of certain names and the supplementing of the list with other names, after which the commissioners and witnesses certify that:
“Having proceeded to examine original venire list, and having performed all matters and things as set forth the caption hereof, we have closed and sealed the venire box and delivered same to Henry Lastrappes, Jr., clerk of the court, to be by him kept on file, we have closed the procSs verbal and signed same, together with the aforesaid competent and disinterested witnesses,” etc.
The clerk testifies that the tales jury box was made up, on the day to which the foregoing procSs verbal refers, by the selection of 100 names, which were written on as many cards and placed in the box, which was then sealed; that the same names were placed in an envelope, which was likewise sealed, marked “tales jurors,” and kept in his possession; that those were the first tales jurors drawn under the provision of the act of 1914; that the envelope still remained sealed and that the box had remained sealed until it was opened for the purposes of this case (on April 22, 1915); that there was no criminal term of the court after the selection of names, on October 1, 1914, until the term beginning April 19, 1915, and hence that none of the names so selected had been drawn from the box, up to the date last mentioned; that no procSs verbal, showing how the 100 names were drawn, was placed in either the box or the envelope; and that the commissioners did not, at the April term, open the box or the envelope, in order to ascertain if any of the bearers of the names which had been placed therein had died or had removed from the parish.
[1] Act 182 of 1914, amending and re-enacting section 11 of Act 135 of 1898, reads, in part, as follows:
“ * * * That it shall be the duty of the jury commission, at each time that it selects or draws a regular petit jury for the trial of criminal eases, and at such other times as the court may order, to select 100 tales jurors, good men and true, and place their names in a box to be known as the tales jury box, securely lock the same and deliver it with the key thereto to the district clerk of the parish, who shall keep the same unopened * * * in his possession until ordered by the court to produce the same. If on the trial of any criminal case the regular venire is exhausted * * * before the selection of the jury therein, the court shall instruct the clerk to open such tales jury box and draw therefrsm such number of tales jurors as in its *227 judgment may be necessary to serve on said case, and it shall be the duty of the sheriff to forthwith summon such tales jurors to serve in said case, and it shall be the duty of such tales jurors so summoned to report immediately for jury service in said court in said case, and no tales juror shall be summoned or be permitted to serve * * * except as so drawn: Provided that the names of the talcs jurors drawn from such tales jury box, and who do not serve, shall not be returned to said tales jury box by the district cleric, but the slips upon which said names are written shall be destroyed in the presence of the court by the district clerk; and provided that the jury commission may at any time, without the order of court, supplement the names of tales jurors in said tales jury box, until the full complement of 100 is reached. All tales jurors shall possess the same qualifications as provided for regular jurors, but no publication of the tales jury list shall be necessary, but a copy of same, as drawn by the clerk, shall be furnished the defense before the trial shall proceed. The jury commission shall not make known in any manner the names placed in said tales jury box, and should any of them do so he shall be held in contempt of court and punished accordingly.”
[2] It is evident that the statute thus quoted does not contemplate that the jury commission shall, necessarily, “select 100 tales jurors,” each time that it draws jurors for service on the petit j uries in criminal cases (though some of the language reads in that way), since the later provisions authorize the jury commission, at its descretion, and any time, to supplement the names of tales jurors, in the box, “until the full complement of 100 .is reached” and it will not be assumed that it is the intention to draw 100 names if the full complement is already in the box. It is also evident that the statute requires neither the drawing nor the supplementing of the tales jury list except when petit jurors are to be drawn to serve in criminal cases; and, as, in this instance, there were no criminal cases called for trial between October 1, 1914, when the tales jury list was completed, and April, 1915, when this case was called for trial, it does not appear that the list in the box required supplementing, in order that the full complement of 100 names be reached upon the occasion last mentioned. Although, therefore, we are of opinion that it would be better practice for the jury commission to make a more precise record of its proceedings than was done in this case, and to ascertain, in advance of the occasions when criminal cases are to be tried, that the number of tales jurors whose names were previously placed in the box, has not been depleted by deaths, removals, or other causes, we do not find that its failure in those respects constitutes reversible error in this instance.
Judgment affirmed.